IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EMMANUEL S. TROTTER,                )
                                    )
        Plaintiff,                  )
                                    )
VS.                                 )        No. 13-1087-JDT/egb
                                    )
DIANE RAMSEY, et al.,               )
                                    )
        Defendants.                 )

_____

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND/OR FOR SUMMARY JUDGMENT

_____

Plaintiff Emmanuel S. Trotter, an inmate at the Northwest Correctional Complex

("NWCX"), filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA") against Correctional Officer Diane Ramsey,

Sergeant Ray Lamb, Lieutenant Artie Lynch, Associate Warden Melvin Tirey, Kurt Gross,

Warden Wayne Carpenter, and Tennessee Department of Correction ("TDOC")

Commissioner Derrick Schofield. The court dismissed the claims against Defendants Gross,

Tirey, Carpenter, and Schofield for failure to state a claim on which relief may be granted

and ordered service of process for Defendants Officer Ramsey, Sergeant Lamb, and

Lieutenant Lynch. Defendants have now filed a motion to dismiss and/or for summary

judgment [DE# 44]. Plaintiff has filed a response to the motion, and Defendants have filed

a reply to the response. For the reasons set forth below, Defendants' motion is GRANTED.[1]

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

---

[1] Because the court has considered matters outside the pleadings, the motion has been considered under the summary judgment standard.

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

(3)　　　grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4)　　　issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In <u>Celotex Corp.</u>, the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23.   In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion."  <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence

that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its

burden under Rule 56[(a)], its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." (footnote omitted)).  However, the court's

function is not to weigh the evidence, judge credibility, or in any way determine the truth of

the matter.  Liberty Lobby, 477 U.S. at 249.  Rather, the inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law."  Id. at 251-52.

Plaintiff alleges that, on two occasions in 2012, Defendants Ramsey, Lamb, and

Lynch did not permit him to hold Sabbath/Advent Bible study.  Plaintiff contends that the

actions of Defendants on these two occasions violated his right to practice his religion under

§ 1983 and RLUIPA.

According to Plaintiff, he has been an approved group leader since December 2010,

with authorization to conduct Bible study without a chaplain or religious volunteer. On

Saturday, October 27, 2012, Defendant Ramsey allegedly told Plaintiff that he would no

longer be allowed to hold his service without a religious volunteer present even though

Defendants had been given a directive to allow all inmate-led services to continue. Because

no religious volunteer was present on that date,[3] Plaintiff was allegedly denied the

opportunity to observe the Sabbath. A similar incident allegedly occurred on November 3,

---

[3] Apparently more traditional religious groups who hold their services on the weekend are not faced with
this problem, as it is easier to obtain a local volunteer to supervise those services.

2012. Plaintiff alleges that he was told by Defendant Lynch that there would be no religious service because a religious volunteer was not available.

Incarceration in a penal facility does not eliminate an inmate's First Amendment protections, including the right to exercise his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Turner v. Safley, 482 U.S. 78, 84 (1987); Bell v. Wolfish, 441 U.S. 520, 545 (1979). However, that right is subject to restrictions that are reasonably related to legitimate penological interests such as institutional safety and security. O'Lone, 482 U.S. at 348-49; Turner, 482 U.S. at 89.

The Turner Court adopted a deferential standard for reviewing prisoners' constitutional claims: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. Four factors are relevant under this standard. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." Id. (quotation omitted). In addition, courts should consider: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives. Id. at 90.

RLUIPA, 42 U.S.C. § 2000cc-1(a),[4] provides similar protections:

---

[4] Monetary damages are not available against individual officers under RLUIPA. See Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009)

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)     is in furtherance of a compelling governmental interest; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

RLUIPA applies a strict-scrutiny standard to actions by prison officials that impose a substantial burden on the religious exercises of prisoners. See Marsh v. Granholm, 2006 WL 2439760, at *9 (W.D. Mich. Aug. 22, 2006) (report and recommendation).

The plaintiff has the burden of proving that the practice at issue imposes a substantial burden on his religious exercise. 42 U.S.C. § 2000cc-2(b); Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004); Treece v. Burnett, 2007 WL 2815020 at *4 (W.D. Mich.). The statute's legislative history indicates that the term "substantial burden" as used in RLUIPA is not intended to be interpreted more broadly than the Supreme Court has interpreted it in religious exercise cases. Living Water Church of God v. Charter Tp. of Meridian, 2007 WL 4322157 at *5 (6th Cir.). The Sixth Circuit explained the contours of the Supreme Court's substantial burden test in religious free exercise cases as follows:

> [W]hile the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," Sherbert [v. Warner], 374 U.S. [398, 404 (1963)]..., it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. See Lyng [v. Northwest Indian Cemetery Protective Ass'n], 485 U.S.

[439, 449 (1988)] ...; see also Episcopal Student Found. V. City of Ann Arbor, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004)("[C]ourts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs.").

Living Water Church, 2007 WL 4322157 at *5 (some citations omitted). See also Cutter v. Wilkinson, 544 U.S. 709, 720 (2005) (RLUIPA's institutionalized persons provision was intended to alleviate only exceptional burdens on religious exercise).

Defendants do not contest the fact that Plaintiff was an approved inmate service leader;[5] therefore, the issues before the court are (1) whether the prison had a policy that allowed Plaintiff to conduct religious services without in-person supervision, (2) if not, whether this policy violated Plaintiff's religious rights, and (3) whether Defendants violated religious rights on the two relevant dates.

It is undisputed that the version of TDOC Policy 118.01(VI)(d)(2)(b) in place at the time of the events giving rise to this lawsuit stated as follows: "An inmate may be authorized by the Warden to lead the service. Inmates may ONLY lead religious services in the presence of staff" (emphasis in policy). Whether or not Plaintiff was an approved service leader did not dispense with the requirement that the service be conducted with a staff member present pursuant to Tennessee Department of Correction policy 118.01.

In addition to this policy, on September 18, 2012, Associate Warden Tirey sent a memorandum to the security staff which stated, "Effective immediately, all religious services

---

[5] Plaintiff's congregation was never able to secure a religious volunteer from the free world. Trotter Depo. pp. 18, 29, 32. Because the congregation could not find a volunteer in the community and the prison chaplains do not work on the weekends, they had to rely on prison security staff to monitor their service.

held in the Chapel must have security staff present unless the Chaplain or other approved religious personnel are present." Tirey Memo. 9/18/2012 attached to Tirey Affidavit, D.E. 55-1. On November 1, 2012, Tirey sent an email regarding chapel security. In this email, he gave the following directive, "I have the [sic] instructed the chapel to remain secure when not in use and for the inmate worker not to be there unless properly supervised. One main issue must be made clear. When religious services are scheduled they WILL BE CONDUCTED AS SCHEUDULE [sic]. If the chaplain is not here provide supervision but make sure the services are conducted." Tirey Email 11/1/2012 attached to Tirey Affidavit, D.E. 55-1.

Plaintiff asserts that Defendants were given a directive by the warden to allow all inmate-led services to be held as scheduled with security staff present <u>or</u> by video monitoring.  He asserts that staff could have monitored the service on closed circuit television. However, neither of the above referenced communications from Associate Warden Tirey allow for video monitoring by staff. Instead, read together, the communications and the TDOC policy direct staff not to allow Plaintiff to conduct a religious service without a chaplain, religious volunteer, or staff member present. Tirey Affidavit, ¶ 8, D.E. 55-1.

In support of his argument, Plaintiff points to the portion of TDOC Policy 118.01(VI)(d)(2) that states "Group religious activities shall be videotaped and/or monitored by staff." However, this portion of the policy is modified by the proviso that "[i]nmates may ONLY lead religious services in the presence of staff." TDOC Policy 118.01(VI)(d)(2)(b)

(emphasis in original).  Therefore, the court finds that prison policy mandated that inmate-led

services must have either an outside leader or security staff present and that video monitoring

only was not allowed.

Defendants have presented unrefuted evidence that allowing inmates to congregate

unsupervised raises the risk of their engaging in activity which threatens the safety of the

institution. Examples of such activity include drug use, gang activity, exercising undue

influence over one another, or engaging in prohibited sexual misconduct. Tirey Affidavit, ¶

4, 9, 10, D.E. 55-1. This is especially true in light of the fact that, during the time period at

issue, members of the prison staff were having problems with Plaintiff being unsupervised

in the chapel area. Lamb Affidavit, ¶ 4, 5. D.E. 44-3.

There are no alternative means by which the prison can prevent unsupervised religious

gatherings than by requiring that inmate religious services be attended by a chaplain,

religious volunteer, or prison staff member. Tirey Affidavit, D.E. 55-1. Assigning a

permanent staff member to the chapel at all times would place an undue burden on already

strained prison staff and prison resources. Id.

The court finds that the requirement that all religious services be supervised by an

outside religious leader or staff is reasonably related to the legitimate penological interest of

prohibiting inmates from freely interacting with one another behind closed doors where

security breaches could be carried out, including prohibited financial transactions, drug

transactions, gang-related interaction, or sexual acts. Prison chapels are often used to carry

out these activities because officers try to limit their interference with worship services to the

extent they can and the lack of interference may be abused. As such, the court gives substantial deference to the prison policy at issue which is aimed at prohibiting the behaviors discussed above. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Because the policy at issue was aimed at alleviating valid security concerns, it did not violate Plaintiff's rights.

Finally, the court must consider whether Defendants violated Plaintiff's rights on October 27, 2012, and November 3, 2012, by refusing to allow him to hold a service in the chapel.

Defendants contend that Plaintiff testified in his deposition that the two incidents may have been the result of a misunderstanding as to whether he could conduct services without a volunteer, chaplain, or security staff member present. However, as Plaintiff points out in his response, he actually testified that, after the October 27 incident, he was told by Chaplain Glenn that there had been a misunderstanding and he should have been allowed to hold a service. Trotter Depo. at p. 39. Plaintiff also testified that Chaplain Glenn told him that the problem would be fixed by November 3. Id. Plaintiff further makes it clear in his deposition that he believed that Defendants' actions were intentional, contrary to Defendants' contention. Id. at pp. 43, 48 ("I believe what they did was intentional."). Plaintiff responded "yes" to the question "So in your opinion they intentionally prohibited you from having a service?" Id. at p. 49. Clearly, Plaintiff did not testify that he thought that Defendants' actions were merely "mistakes" or a misunderstanding.

Defendants have also mischaracterized Plaintiff's testimony regarding whether conducting a service in his cell was sufficient to fulfill his religious obligations. Defendants

claim that Plaintiff testified during his deposition that, in the case of a lockdown or other security reason, he could conduct a service in his cell by praying, meditating, fasting, and Bible reading, id. at p. 17; and on the afternoon of October 27, 2012, he briefly met with his brothers in a prayer circle and prayed before they went back to their cells to worship. Id. at p. 37. Based on this testimony, Defendants reason that Plaintiff has not shown that the events of October 27 imposed a substantial burden on the practice of his religion.

In actuality, Plaintiff made clear in his deposition that the "holy gathering of brothers" cannot be conducted in a cell. Id. at p. 18 ("The commandment calls for a holy convocation of the entire church or churches that observes the seventh day Sabbath. We can't do that in the cell in a lockdown because we can't get to each other.") Plaintiff also testified that there is no gathering place in his unit where his "brothers of like mind can come together, id. at p. 36, and that he and his fellow Sabbath observers merely prayed for a minute or a minute and a half before dispersing on October 27. Id. at p. 37. They were not able to have an actual service outside the chapel.

Despite Defendants' mischaracterization of Plaintiff's testimony, the court finds that Plaintiff's rights were not violated on the two dates in question. The undisputed evidence shows that, on October 27, 2012, staff was not available to monitor the service, and Defendants did not have the authority to disregard prison policy and leave Plaintiff alone in the chapel with his fellow worshipers. Lamb Affidavit, p. 3, D.E. 44-3; Lynch Affidavit, p. 2, D.E. 44-4; Ramsey Affidavit, p. 2, D.E. 44-5. Defendants' actions in enforcing policy 118.01(VI)(d)(2)(b), which is in place to further a legitimate and compelling penological

11

interest, and in not allowing Plaintiff to proceed with his service unsupervised did not substantially interfere with his ability to freely exercise his religious beliefs.

As for the incident on November 3, 2012, Plaintiff contends that Defendant Lynch told him at approximately 8:30 a.m. that he could not hold a service in the chapel because no outside volunteer was available. Trotter Depo. at pp. 38-39. Based on this information, Plaintiff did not attempt to hold a service at the scheduled time; instead, he went to the unit yard and told his fellow worshippers that there would be no service that day. Id. at p. 40.

Defendant Lynch denies having any contact with Plaintiff on November 3 and maintains that he directed central control to call for service in the chapel. Lynch Affidavit at p. 2. He does admit that there was "some confusion about scheduling in the Chapel." Id. The prison log book from that date supports Defendant's testimony. At 1:09 p.m., an entry "Church Services in Chapel" was made. Log Books, D.E. 44-7.

Accepting as true for the purpose of deciding this motion only Plaintiff's testimony that Defendant Lynch told him early on November 3 that there would be no service that date, the court finds that Defendant's later action in instructing central control to call out the service and have the chapel open negates any burden on Plaintiff's exercise of his religious beliefs. Although it was unfortunate that Plaintiff was outside and did not hear the call, Defendant did not infringe on Plaintiff's constitutional or RLUIPA rights by giving him incorrect information earlier in the day.

Moreover, isolated incidents do not place a substantial burden on an inmate's exercise of religion. See e.g., Greenberg v. Hill, 2009 WL 890521 (S.D. Ohio) (Even accepting the

plaintiff's contention that he was denied a full Seder meal on two occasions, he failed to establish a substantial burden under RLUIPA because these deprivations were isolated occurrences.) See also Brown v. Graham, 470 F. App'x. 11 (2nd Cir. 2012) (failure to provide a kosher meal on one occasion did not rise to the level of a substantial burden); Rapier v. Harris, 172 F.3d 999 (7th Cir.1999) ("the unavailability of a non-pork tray for [plaintiff] at 3 meals out of 810 does not constitute more than a *de minimis* burden on [plaintiff's] free exercise of religion"); Pfeil v. Lampert, 11 F. Supp.3d 1099 (D. Wyo.2014) (a single missed visit with a minister is not a substantial burden); Mubashshir v. Moore, 2011 WL 1496670 (E.D. Mich. 2011) (Isolated acts or omissions are not a substantial burden on religious freedom.); Shaheed v. Winston, 885 F. Supp. 861 (E.D. Va.1995) (a negligent failure to accommodate prisoners' Ramadan celebration resulted from a misunderstanding, which is not actionable under 42 U.S.C. § 1983); Salih v. Smith, 1994 WL 750529 (D. Md.) (negligent act of serving a religious meal two hours late, which was caused by a misunderstanding with the dietary department, was not actionable under 42 U.S.C. § 1983).

Because the undisputed facts show that Defendants' actions did not impose a substantial burden on Plaintiff's exercise of his religious rights, the motion to dismiss and/or for summary judgment [DE# 44] is GRANTED. The clerk is DIRECTED to enter judgment accordingly.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE